**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

**COLLIN THOMAS, ET AL**                    **CASE NO.: 2:24-CV-738**

**VERSUS**                    **JUDGE JAMES D. CAIN, JR.**

**STRATIGOS DYNAMICS, INC.**                    **MAG. JUDGE THOMAS P. LEBLANC**

**THIRD SUPERSEDING AND AMENDING**
**COMPLAINT UNDER THE FAIR LABOR STANDARDS ACT**

NOW INTO COURT, through undersigned counsel, come plaintiff, who pursuant to Fed. R. Civ. P. 15(a)(1)(B) and 20(a)(1) file this "Third Superseding and Amending Complaint Under the Fair Labor Standards Act," which joins Meagan Chaisson as an additional plaintiff as a party to this litigation and which replaces and supersedes the plaintiffs prior original and amended complaints, as follows:

Plaintiffs Collin Thomas, Megan Matthews, Lydia Williams, Tyler Sonnier, Ryan Faulkenbury, Aaron Pickett, Jason Soileau, Marcus Duhon, Joshua Joseph, Blace Simon, Kevin Bouley, Daija Duncan, Timothy Savage, Ryon Abshire, and Meagan Chaisson, all of whom are citizens of the State of Louisiana, and Michael Witherwax, who is a Texas resident, bring this action against their employer, defendant Stratigos Dynamics, Inc. ("SDI"), for failing to pay the plaintiffs all of their minimum wage and overtime pay as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*. In support of this action, the plaintiffs respectfully represent as follows:

2

1.

Made defendant herein is Stratigos Dynamics, Inc. ("SDI"), a Louisiana corporation, which may be served through its registered agent United States Corporation Agents, Inc., 1100 Poydras Street, Suite 2900, New Orleans, Louisiana 70163.

2.

SDI provides armed and unarmed security and patrol services at multiple locations in states across the Gulf Coast, including Louisiana, Mississippi, and Texas.

3.

SDI is domiciled in, has its principal place of business in, and operates and conducts business in Calcasieu Parish, which is within this judicial district. Much of SDI's wrongful conduct and violations of the FLSA alleged in this Complaint as to the plaintiffs also occurred within this judicial district. Therefore, the Western District of Louisiana is the proper venue for this action pursuant to 28 U.S.C. § 1391.

4.

The plaintiffs bring this action against SDI for unpaid minimum wage and overtime compensation, liquidated damages, reasonable attorney fees and costs, and any and all other legal or equitable relief available under the FLSA, 29 U.S.C. § 201, *et seq.*

5.

This Court has jurisdiction over the plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331 and the FLSA.

## FACTUAL ALLEGATIONS RELATED TO ALL PLAINTIFFS

6.

The plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

7.

Plaintiffs were employed by SDI within the three years prior to the filing of this Complaint.

8.

At all times pertinent to the allegations of this Complaint, SDI had arrangements with various entities under which SDI's employees provided security services at Cameron LNG in Cameron Parish, Calcasieu School Board in Lake Charles, Lotte Chemical Plant in West Lake, Swanson Juvenile Facility in Monroe, and Plaquemine LNG in Plaquemine Parish.

9.

At all times pertinent to the allegations of this Complaint, SDI compensated the plaintiffs for their work on an hourly basis.

10.

During their employment with SDI, the plaintiffs' weekly schedule generally consisted of three 12-hour shifts on either Sunday, Monday, and Tuesday, or on Thursday, Friday, and Saturday, as well as one six-hour shift on Wednesday. Thus, the plaintiffs typically were assigned 42 hours of total scheduled shift time each workweek.

11.

In addition to their scheduled shift times, at each of the facilities where plaintiffs worked, SDI mandated that the plaintiffs, along with all employees working at those same facilities, be present anywhere from 15 to 30 minutes before their shifts began to attend pre-shift meetings and

handle other work-related matters. This pre-shift attendance requirement is imposed upon all SDI security guards, officers, team leaders, and other SDI employees at those facilities, regardless of which shift they work, such that all employees are required to be present approximately 15- 30 minutes before their shift is scheduled to begin.

12.

During these pre-shift meetings that began anywhere from 15 to 30 minutes before the scheduled shift time, the SDI team leader reviews information related to the performance of the employees' job duties that day, provides updates on any notable events or incidents that occurred during the previous shift so that the incoming employees are aware of them, and also provides information about individuals who are expected to arrive during the day or anything else of note that might be happening over the course of the upcoming shift so the employees are prepared for their shift.

13.

Following the pre-shift meeting, the employees are required to go to their assigned stations for that day, where they are then allowed to clock in for the day using mobile applications, including m-Post and Track-Tik, which SDI employees are required to have on their personal cell phones. However, SDI forbids its employees from clocking in until 10 minutes before their shifts begin. Thus, for a shift that begins at 5:00 a.m., that employee is not allowed to clock in using the mobile application until at least 4:50 a.m. Upon information and belief, this rule was imposed by SDI to prevent its employees from being paid for all of the time they were entitled to receive for the time they worked before their scheduled shift start time. Even though the plaintiffs would clock in through mobile applications including m-Post and Track-Tik up to 10 minutes before the start

of their scheduled shift time, they still were only paid for work hours beginning at the scheduled shift time, and not from when they clocked in.

14.

Despite mandating that all employees be present approximately 15 to 30 minutes before their shifts began to attend pre-shift meetings and handle other work-related matters, SDI had a policy and practice of not paying its employees for any of the time during which SDI required them to be present before their shift start time. Instead, SDI pays its employees only for the hours that are specifically identified as their scheduled shift time.

15.

For example, on days that an employee's scheduled shift was 5:00 a.m. to 5:00 p.m., SDI paid that employee for only 12 hours, even though the employee was required to arrive 15 to 30 minutes before her 5:00 a.m. shift start time to attend mandatory pre-shift meetings and perform other work-related duties. Thus, the plaintiffs suffered or permitted to work without pay for approximately 15 to 30 minutes each day before their scheduled shifts, during which unpaid time they were engaged in mandatory employment related tasks at SDI's direction.

16.

Additionally, on some occasions, the plaintiffs were required to stay after their scheduled shifts ended. SDI also failed to pay the plaintiffs for that post-shift time during which it required them to continue working.

17.

When an employee's shift ends and they are relieved by the employee who is assigned to that station for the next shift, at that point he or she uses the mobile application to clock out. However, for various reasons, including delays in arriving at to the assigned station or pre-shift

6

meetings that run longer than anticipated, the employee who is taking over that station for the next shift does not always arrive exactly at the time their scheduled shift is to begin and when the outgoing employee's shift is scheduled to end. On those occasions, the outgoing employee at that station must remain later than their scheduled shift end time. However, despite on occasion having to stay later than the scheduled shift end time to continue performing work-related tasks, SDI still only pays its employees for their scheduled shift times. Thus, even on days when an employee is required to stay later than her or his shift end time, and even when they are clocked out using the mobile application after their shift end time, he or she was still only paid for time worked up to their shift end time, and not for the time they continued to perform work for SDI afterwards.

18.

At all times material to the allegations of this Complaint, SDI failed to comply with the FLSA by (1) requiring the plaintiffs to be present for and attend pre-shift meetings and handle other work-related matters every day 15 to 30 minutes before their shifts began without pay, and (2) requiring the plaintiffs to continue working without pay on some occasions after their shifts had ended.

19.

SDI's failure to pay the plaintiffs for all of the time they worked constituted a violation of both the minimum wage and overtime provisions of the FLSA.

20.

For workweeks in which a plaintiff worked less than 40 hours, and in which the additional time that plaintiff was required by SDI to work before and after his shift without pay did not result in that plaintiff working in excess of 40 hours, SDI's failure to pay the plaintiff for the additional time worked constitutes a violation of the FLSA's minimum wage provisions.

21.

For workweeks in which a plaintiff worked in excess of 40 hours, and/or in which the additional time that plaintiff was required by SDI to work before and after their shift without pay resulted in that plaintiff working in excess of 40 hours, SDI's failure to pay the plaintiff for the additional time worked constitutes a violation of the FLSA's overtime provisions.

22.

SDI willfully operated under a scheme to deprive the plaintiffs of proper minimum wages and/or overtime compensation by failing to pay them for all hours worked as required under federal law.

23.

SDI knew that the plaintiffs performed work that required proper payment of minimum wage and/or overtime compensation.

24.

SDI was aware of its unlawful payment practices and chose to disregard the consequences of its actions.

25.

The plaintiffs were entitled to be paid for all time worked for SDI, including time and one-half their regular rate of pay for each hour worked in excess of 40 hours per work week.

26.

The records, to the extent any exist, concerning the number of hours worked, amounts paid to the plaintiffs, and other information relevant to the allegations of this Complaint, are in the possession and custody of SDI, which as an employer is required by law to maintain such records, including pursuant to 29 U.S.C. § 211 and 29 C.F.R. Part 516.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC
## TO PLAINTIFF COLLIN THOMAS

27.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

28.

Plaintiff Collin Thomas was employed by SDI beginning on or about September 10, 2021, until on or about October 6, 2023.

29.

During his employment with SDI, Mr. Thomas worked as an armed guard, armed patrol, team leader and shift supervisor at Cameron LNG, PLNG, Lottee Chemical Plant and Calcasieu School Board.

30.

During his employment with SDI, Mr. Thomas on some occasions had scheduled shifts that began at 5:00 a.m. and ended at 5:00 p.m., while on other occasions he had scheduled shifts that began at 7:00 a.m. and ended at 3:00 p.m.

31.

At all times during his employment with SDI, Mr. Thomas was required to attend pre-shift meetings which began approximately 30 minutes before every scheduled shift.

32.

SDI did not pay Mr. Thomas for any of the time he attended the mandatory pre-shift meetings each day of his employment.

33.

Mr. Thomas understood that attendance at the pre-shift meetings was mandatory. He would always get told that he would be written up if he arrived late or missed pre-shift meetings. While working in a supervisory role, he would always be reminded by other management that pre-shift was required to make sure all the staff understood their duties and responsibilities at each assigned post daily.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF MEGAN MATTHEWS

34.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

35.

Plaintiff Megan Matthews was employed by SDI on two separate occasions, but the most recent employment ended on or about August 31, 2022.

36.

During her employment with SDI, Ms. Matthews worked as an unarmed and patrol guard at Cameron LNG.

37.

During her employment with SDI, Ms. Matthews on some occasions had scheduled shifts that began at 5:00 a.m. and ended at 5:00 p.m., while on other occasions she had scheduled shifts that began at 5:00 p.m. and ended at 5:00 a.m.

38.

At all times during her employment with SDI, Ms. Matthews was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

39.

SDI did not pay Ms. Matthews for any of the time she attended the mandatory pre-shift meetings each day of her employment.

40.

Ms. Matthews understood that attendance at the pre-shift meetings was mandatory. Her and other coworkers would often be told by management that disciplinary actions would occur due to failure to attend pre-shift meetings. In fact, Ms. Matthews was given a verbal warning for arriving a few minutes late to pre-shift.

41.

Ms. Matthews would sometimes have to stay late while being clocked out waiting on her relief. She was never paid while waiting the extra 5-10 minutes to be relieved. Ms. Matthews was told she had to be clocked out at her scheduled shift end time.

**ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC
TO PLAINTIFF LYDIA WILLIAMS**

42.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

43.

Plaintiff Lydia Williams was employed by SDI beginning on or about March 2022 until on or about May 27, 2024.

44.

During her most recent employment with SDI, Ms. Williams worked as an unarmed security guard at Lottee Chemical Plant.

45.

During her employment with SDI, Ms. Williams on some occasions had scheduled shifts that began at 5:30 a.m. and ended at 5:30 p.m. while on other occasions she had scheduled shifts that began at 5:30 p.m. and ended at 5:30 a.m.

46.

At all times during her employment with SDI, Ms. Williams was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

47.

SDI did not pay Ms. Williams for any of the time she attended the mandatory pre-shift meetings each day of her employment.

48.

Ms. Williams understood that attendance at the pre-shift meetings was mandatory. Ms. Williams was written up and given points due to being late to pre-shift meetings.

49.

Ms. Williams complained about pre-shift meetings to her team lead, including asking why she had to show up so early if she was not being paid for it. The responses from the team lead would simply be that pre-shift is required.

**ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC
TO PLAINTIFF TYLER SONNIER**

50.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

51.

Plaintiff Tyler Sonnier was employed by SDI beginning on or about June 2021 until on or about February of 2022.

52.

During his employment with SDI, Mr. Sonnier worked as an unarmed guard at Cameron LNG.

53.

During his employment with SDI, Mr. Sonnier had scheduled shifts that began at 5:00 a.m. and ended at 5:00 p.m.

54.

At all times during his employment with SDI, Mr. Sonnier was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

55.

SDI did not pay Mr. Sonnier for any of the time he attended the mandatory pre-shift meetings each day of his employment.

56.

Mr. Sonnier understood that attendance at the pre-shift meetings was mandatory. He knew other people had been disciplined due to not showing up or arriving late to the meetings.

57.

Mr. Sonnier complained to his team lead about not being able to clock in as soon as he arrived at work. The response from the team lead was that it is above his pay grade.

58.

Mr. Sonnier had to stay at work while being clocked out for his shift to wait to be relieved almost the entire time of his employment.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF RYAN FAULKENBURY

59.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

60.

Plaintiff Ryan Faulkenbury was employed by SDI beginning on or about February of 2022, until on or about August of 2023.

61.

During his employment with SDI, Mr. Faulkenbury worked as an armed guard at Swanson Juvenile Facility.

62.

During his employment with SDI, Mr. Faulkenbury had scheduled shifts that began at 6:00 p.m. and ended at 6:00 a.m.

63.

At all times during his employment with SDI, Mr. Faulkenbury was required to attend pre-shift meetings which began approximately 15-30 minutes before every scheduled shift.

64.

SDI did not pay Mr. Faulkenbury for any of the time he attended the mandatory pre-shift meetings each day of his employment.

65.

Mr. Faulkenbury understood that attendance at the pre-shift meetings was mandatory. He was always threatened by his supervisors that disciplinary action would occur if he missed a pre-shift meeting.

66.

Mr. Faulkenbury was written up for leaving a minute early and once for skipping pre-shift and going straight to his post. He would complain to his supervisors and also submitted a complaint via the company's email system about having to come to work early and not being paid. He never received a response from his supervisors regarding the pre-shift meetings, but was told that if he stayed on the clock to finish up his duties past 6:00 a.m. that they would adjust his time to reflect that he left at 6:00 a.m.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF AARON PICKETT

67.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

68.

Plaintiff Aaron Pickett was employed by SDI beginning on or about February of 2022 until on or about August of 2023.

69.

During his employment with SDI, Mr. Pickett worked as an armed guard at the Swanson Juvenile Facility.

70.

During his employment with SDI, Mr. Pickett on some occasions had scheduled shifts that began at 5:00 p.m. and ended at 5:00 a.m.

71.

At all times during his employment with SDI, Mr. Pickett was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

72.

SDI did not pay Mr. Pickett for any of the time he attended the mandatory pre-shift meetings each day of his employment.

73.

Mr. Pickett understood that attendance at the pre-shift meetings was mandatory. In fact, Mr. Pickett was given a verbal warning for arriving one minute late to pre-shift.

74.

Mr. Pickett complained to his team leader about the requirement of showing up early for pre-shift and not being paid for it. He specifically mentioned him being disciplined for being one minute late.

**ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC
TO PLAINTIFF JASON SOILEAU**

75.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

76.

Plaintiff Jason Soileau was employed by SDI beginning on or about July of 2022, until on or about March 1, 2024

16

77.

During his employment with SDI, Mr. Soileau worked as a rover and team leader at Lottee Chemical Plant.

78.

During his employment with SDI, Mr. Soileau on some occasions had scheduled shifts that began at 5:30 a.m. and ended at 5:30 p.m.

79.

At all times during his employment with SDI, Mr. Soileau was required to attend pre-shift meetings which began approximately 15-30 minutes before every scheduled shift.

80.

SDI did not pay Mr. Soileau for any of the time he attended the mandatory pre-shift meetings each day of his employment.

81.

Mr. Soileau understood that attendance at the pre-shift meetings was mandatory. While working as a team leader, he would hear the importance of pre-shift meetings from other management and would sometimes question the necessity of the meetings.

82.

Mr. Soileau would complain about the requirement for pre-shift meetings saying "If we're here for pre-shift meetings, we should be able to clock in." The response to his complaint was, "It's just company policy."

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC
## TO PLAINTIFF MARCUS DUHON

83.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

84.

Plaintiff Marcus Duhon was employed by SDI beginning on or about May 23, 2023, and is currently still employed there.

85.

During his employment with SDI, Mr. Duhon has worked and currently works as an unarmed guard at Lottee Chemical Plant.

86.

During his employment with SDI, Mr. Duhon has scheduled shifts that begin at 5:30 p.m. and end at 5:30 a.m.

87.

During his employment with SDI, Mr. Duhon was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

88.

SDI did not pay Mr. Duhon for any of the time he attended the mandatory pre-shift meetings each day of his employment.

89.

Mr. Duhon understands that attendance at the pre-shift meetings was mandatory.

90.

Mr. Duhon was given points due to being late to the pre-shift meetings.

18

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC
## TO PLAINTIFF JOSHUA JOSEPH

91.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

92.

Plaintiff Joshua Joseph was employed by SDI beginning on or about September 14, 2022, and is currently still employed.

93.

During his employment with SDI, Mr. Joseph worked as a patrol and armed guard at Cameron LNG.

94.

During his employment with SDI, Mr. Joseph on some occasions had scheduled shifts that began at 5:00 p.m. and ended at 5:00 a.m.

95.

At all times during his employment with SDI, Mr. Joseph was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

96.

SDI did not pay Mr. Joseph for any of the time he attended the mandatory pre-shift meetings each day of his employment.

97.

Mr. Joseph understood that attendance at the pre-shift meetings was mandatory. Mr. Joseph would constantly be told by his superiors that he would be disciplined if he failed to comply with pre-shift attendance requirements.

98.

Mr. Joseph was given a verbal warning and a point for arriving one minute late to pre-shift.

99.

Occasionally, Mr. Joseph would have to stay after his shift while being clocked out while waiting on his relief.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF BLACE SIMON

100.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

101.

Plaintiff Blace Simon was employed by SDI beginning on or about March of 2021 until on or about October of 2022.

102.

During his employment with SDI, Mr. Simon worked as an assistant team leader at Cameron LNG.

103.

During his employment with SDI, Mr. Simon had scheduled shifts that began at 5:00 p.m. and ended at 5:00 a.m.

104.

At all times during his employment with SDI, Mr. Simon was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

105.

SDI did not pay Mr. Simon for any of the time he attended the mandatory pre-shift meetings each day of his employment.

106.

Mr. Simon understood that attendance at the pre-shift meetings was mandatory. While having a supervisory role, Mr. Simon would sometimes have to listen to employees complain about the pre-shift meetings and explain that he's just doing his job.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF KEVIN BOULEY

107.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

108.

Plaintiff Kevin Bouley was employed by SDI beginning on or about February 25, 2022, and is still currently employed.

109.

During his employment with SDI, Mr. Bouley worked as an unarmed and armed guard at the bus loading site on Helms Street and currently at Cameron LNG.

110.

During his employment with SDI, Mr. Bouley on some occasions had scheduled shifts that began at 4:30 p.m. and ended at 4:30 a.m., while on other occasions he had scheduled shifts that began at 5:00 p.m. and ended at 5:00 a.m.

111.

At all times during his employment with SDI, Mr. Bouley was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

112.

SDI did not pay Mr. Bouley for any of the time he attended the mandatory pre-shift meetings each day of his employment.

113.

Mr. Bouley understood that attendance at the pre-shift meetings was mandatory. His supervisors would always let be known that failure to show up late would result in disciplinary action.

114.

Mr. Bouley was written up and given points due to arriving late for pre-shift, which he thought was unfair since he would only be late by a few minutes. He complained to his team lead when he initially started the job, expressing how he had never experienced with any other employment where he had to report to work earlier than his assigned shift time but not be compensated for it. The response he received from the shift lead was that "It shouldn't matter if you have to arrive early being that you don't take a lunch break."

**ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF DAIJA DUNCAN**

115.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

116.

Plaintiff Daija Duncan was employed by SDI beginning on or about April 27, 2021, until on or about June of 2022.

117.

During her employment with SDI, Ms. Duncan worked as an unarmed security guard at Cameron LNG.

118.

During her employment with SDI, Ms. Duncan on some occasions had scheduled shifts that began at 5:00 a.m. and ended at 5:00 p.m., while on other occasions she had scheduled shifts that began at 5:00 p.m. and ended at 5:00 a.m.

119.

At all times during her employment with SDI, Ms. Duncan was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

120.

SDI did not pay Ms. Duncan for any of the time she attended the mandatory pre-shift meetings each day of her employment.

121.

Ms. Duncan understood that attendance at the pre-shift meetings was mandatory. She would sometimes be late to pre-shift due to having to ride the bus that brings the employees on site. Despite the bus situation, her supervisors still expected all employees to be at pre-shift on time.

122.

Ms. Duncan complained to her team leads during the pre-shift meetings regarding the bus situation saying that it was out of her control that the bus would drop the employees off late to the site. The response from the team lead was that she should try to get there quicker.

123.

Ms. Duncan would sometimes have to stay at work while being clocked out when waiting on relief. The team lead would make sure she was clocked out no later than 5:00 despite still doing work duties while unpaid.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF TIMOTHY SAVAGE

124.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

125.

Plaintiff Timothy Savage was employed by SDI beginning on or about March 16, 2021, until on or about August 2022.

126.

During his employment with SDI, Mr. Savage worked as an armed guard at the Swanson Juvenile Facility.

127.

During his employment with SDI, Mr. Savage had scheduled shifts that began at 6:00 p.m. and ended at 6:00 a.m.

128.

At all times during his employment with SDI, Mr. Savage was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

129.

SDI did not pay Mr. Savage for any of the time he attended the mandatory pre-shift meetings each day of his employment.

130.

Mr. Savage understood that attendance at the pre-shift meetings was mandatory. Mr. Savage was given a verbal warning and a write up due to being one minute late to pre-shift.

**ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF MICHAEL WITHERWAX**

131.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

132.

Plaintiff Michael Witherwax was employed by SDI beginning on or about January 1, 2021, until on or about January 27, 2023.

133.

During his employment with SDI, Mr. Witherwax worked as a team lead at Cameron LNG.

134.

During his employment with SDI, Mr. Witherwax had scheduled shifts that began at 5:00 p.m. and ended at 5:00 a.m.

135.

At all times during his employment with SDI, Mr. Witherwax was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

136.

SDI did not pay Mr. Witherwax for any of the time he attended the mandatory pre-shift meetings each day of his employment.

137.

Mr. Witherwax understood that attendance at the pre-shift meetings was mandatory.

138.

Mr. Witherwax complained to Dallas Clark regarding the pre-shift meeting requirement. The response was that since SDI does not deduct time for a lunch break from its employees' pay, they do not have to be paid for the pre-shift meetings.

## ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC
## TO PLAINTIFF RYON ABSHIRE

139.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

140.

Plaintiff Ryon Abshire was employed by SDI beginning on or about February 6, 2022, until on or about July 30, 2024.

141.

During his employment with SDI, Mr. Abshire worked as an unarmed guard, an armed guard, a supervisor, and a training officer. Mr. Abshire primarily worked at Cameron LNG, although for a few months he worked at PLNG.

142.

During his employment with SDI, Mr. Abshire had scheduled shifts that began at 5:00 p.m. and ended at 5:00 a.m.

143.

At all times during his employment with SDI, Mr. Abshire was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

144.

SDI did not pay Mr. Abshire for any of the time he attended the mandatory pre-shift meetings each day of his employment.

145.

Mr. Abshire understood that attendance at the pre-shift meetings was mandatory.

**ADDITIONAL FACTUAL ALLEGATIONS SPECIFIC
TO PLAINTIFF MEAGAN CHAISSON**

146.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

147.

Plaintiff Meagan Chaisson was employed by SDI beginning on or about July 2, 2022, until or about June 12, 2024.

148.

During her employment with SDI, Ms. Chaisson worked as armed guard and assistant team leader at Cameron LNG.

149.

During her employment with SDI, Ms. Chaisson had scheduled shifts that began at 5:00 a.m. and ended at 5:00 p.m.

150.

At all times during her employment with SDI, Ms. Chaisson was required to attend pre-shift meetings which began 30 minutes before every scheduled shift.

151.

SDI did not pay Ms. Chaisson for any of the time she attended the mandatory pre-shift meetings each day of her employment.

152.

Ms. Chaisson understood that attendance at the pre-shift meetings was mandatory.

153.

Ms. Chaisson complained to Dallas Clark and Eric Abshire regarding the pre-shift meeting requirements and not being compensated. She never received a response to her complaints.

154.

Ms. Chaisson would sometimes have to stay at work while being clocked out when waiting on relief. There was one instance where she stayed until 7:00 pm to be relieved.

**COUNT I**
**Unpaid Minimum Wage and Overtime Wages Under the FLSA**
*By All Plaintiffs*

155.

The plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein, and in addition, allege:

156.

The plaintiffs each individually assert a right to recovery under this Count I for SDI's common scheme in failing to pay each of them minimum wage and overtime wages for all hours worked, in violation of the FLSA.

157.

SDI is an "employer" and an "enterprise" and is engaged in "commerce" within the meaning of the FLSA. 29 U.S.C. § 203(b), (d), (r), and (s).

158.

The FLSA requires covered employers like SDI to pay non-exempt employees like the plaintiffs no less than $7.25 per hour for all hours worked, as well as one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek. 29 U.S.C. § 206 and 207.

159.

The plaintiffs regularly worked more than 40 hours per week for SDI, but SDI did not properly compensate them for the statutory minimum wage owed to them for all regular hours worked, nor the statutory amounts due for all of their overtime hours as required by the FLSA.

160.

SDI did not and has not made a good-faith effort to comply with the FLSA as it relates to the compensation of the plaintiffs.

161.

SDI knew that the plaintiffs worked regular and overtime hours without proper compensation, and it willfully failed and refused to pay the plaintiffs wages at the required minimum wage and overtime rates for all hours worked. *See* 29 U.S.C. § 255.

162.

SDI's willful failure and refusal to pay the plaintiffs the mandatory minimum and overtime wages for all time worked violates the FLSA. 29 U.S.C. § 206 and 207.

163.

As a direct and proximate result of SDI's unlawful practices, the plaintiffs suffered and continue to suffer wage loss and are therefore entitled to recover unpaid minimum and overtime wages for up to three years prior to the filing of their claims, liquidated damages or prejudgment interest, attorney fees and costs, and such other legal and equitable relief as the Court deems just and proper.

164.

The plaintiffs are all victims of SDI's repeated, systematic, and consistent illegal policies that have resulted in willful violations of their rights under the FLSA, which have caused significant damage to the plaintiffs.

**PRAYER FOR RELIEF**

165.

**WHEREFORE**, plaintiffs Collin Thomas, Megan Matthews, Lydia Williams, Tyler Sonnier, Ryan Faulkenbury, Aaron Pickett, Jason Soileau, Marcus Duhon, Joshua Joseph, Blace Simon, Kevin Bouley, Daija Duncan, Timothy Savage, Michael Witherwax, Ryon Abshire, and Meagan Chaisson pray for relief as follows:

a) A finding that SDI's violations of the FLSA are willful pursuant to 29 U.S.C. § 255(a);

b) Judgment against SDI for an amount equal to each of the plaintiffs' unpaid back wages at the applicable minimum wage and/or overtime rates;

c) An amount equal to each of the plaintiffs' damages as liquidated damages;

d) All costs and attorneys' fees incurred in prosecuting this suit;

e) An award of any pre- and post-judgment interest;

f) All further relief as the Court deems just and equitable.

Respectfully submitted:

Simien & Simien, L.L.C.
Attorneys and Counselors at Law
7908 Wrenwood Boulevard
Baton Rouge, Louisiana 70809
Telephone:  (225) 932-9221
FAX:  (225) 932-9286

*s/ Roy Bergeron, Jr.*
By:    Eulis Simien, Jr., Bar # 12077
       eulissimien@simien.com
       Jimmy Simien, Bar # 1598
       jimmysimien@simien.com
       Roy Bergeron, Jr., Bar # 33726
       roybergeron@simien.com